# EXHIBIT 1

FILED
3/2/2023 12:59 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH10789
Calendar, 2
21696198

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| KARIE ANNE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2022 CH 10789 |
| | ) | |
| v. | ) | |
| | ) | |
| BETTER VET LLC, a Massachusetts | ) | Amount Claimed: damages in excess of |
| limited liability company, | ) | $50,000.00, plus unjust enrichment and |
| | ) | other damages. |
| | ) | |
| | ) | Plaintiff demands trial by jury. |
| Defendant. | ) | |

### AMENDED VERIFIED COMPLAINT

Plaintiff, KARIE ANNE JOHNSON, individually ("Plaintiff"), by and through her counsel, ALBEE LAW PC, complains of Defendant, BETTER VET LLC, a Massachusetts limited liability company ("Defendant"), and states:

### PARTIES

1. Plaintiff is an Illinois resident.

2. Defendant is a Massachusetts limited liability company authorized and admitted as a foreign limited liability company in Illinois.

3. Defendant owns and operates mobile veterinary clinics throughout the United States, including in the Cook County, Illinois, region.

4. Plaintiff is a licensed Illinois veterinarian.

5. Plaintiff worked as a veterinarian for Defendant and its affiliate, BV VETERINARY SERVICES ILLINOIS, PLLC ("PLLC"), in the Cook County, Illinois, region from on or about June 6, 2022 to October 4, 2022.

6. The PLLC is not a party to this litigation.

**EXHIBIT**

**1**

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of and the parties to this controversy because: (a) Plaintiff resides in Illinois; (b) Defendant conducts business in Illinois; and (c) this controversy arises from the transaction of business in Illinois.

8.     Pursuant to 735 ILCS 5/2-101, venue is proper in Cook County, Illinois, because the transaction or some part thereof from which this action arises occurred in Cook County, Illinois.

## STATEMENT OF FACTS

9.     Plaintiff is a part-owner of VIP Vet Visit, Inc., an Illinois corporation ("VIP Vet Visit"), which is not a party to this litigation.

10.     From on or about January 23, 2019 to on or about June 6, 2022, VIP Vet Visit owned and operated a business that provided mobile and offsite veterinary services in the Cook County, Illinois, area.

11.     Plaintiff was the sole veterinarian on staff at VIP Vet Visit and the only veterinarian who provided services on behalf of VIP Vet Visit to its clients.

12.     On or about July 2021, Defendant approached Plaintiff and VIP Vet Visit and offered to purchase VIP Vet Visit's practice and assets.

13.     On or about April 2022, Plaintiff and VIP Vet Visit agreed to sell VIP Vet Visit's practice and assets to Defendant, subject to the parties entering a written purchase agreement, and with a planned closing date of June 6, 2022.

14.     While negotiating the sale and related transaction documents, Defendant advised Plaintiff and VIP Vet Visit that, to comply with Illinois law surrounding the ownership and operation of veterinary practices, Defendant would use its affiliate, the PLLC, to purchase the

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

pharmaceutical assets and operate the practice's professional services after closing.

15.     In an email dated April 26, 2022, Defendant's in-house counsel, Wendy Koelsch, advised Plaintiff's and VIP Vet Visit's attorney, Joseph Beer, that Defendant had formed "our PLLC…'BV Veterinary Services, Illinois, PLLC'" in Illinois to operate the practice, with an Illinois-licensed veterinarian to be the PLLC's membership interest holder. A true and correct copy of Ms. Koelsch's April 26, 2022 email is attached hereto and incorporated herein as Exhibit "A".

16.     According to the Illinois Secretary of State's records, Lisa Danielle Cimino, DVM, organized the PLLC on July 26, 2021 for the purpose of "Mobile veterinary services". A true and correct copy of the PLLC's Articles of Organization, filed July 26, 2021, is attached hereto and incorporated herein as Exhibit "B".

17.     On information and belief, at the time of filing the articles of organization, Dr. Cimino was Defendant's employee or otherwise affiliated with Defendant.

18.     The articles of organization list both the PLLC's principal place of business and Dr. Cimono's address as the same address as Defendant's corporate address in Boston, Massachusetts. *See* Exhibit B.

19.     During negotiations regarding the sale of VIP Vet Visit's assets and practice, Ms. Koelsch initially advised Plaintiff and her counsel that Dr. Cimino would hold the PLLC's membership interest.

20.     Later, on May 10, 2022, Ms. Koelsch stated in an email to Plaintiff and others:

> …Considering that [Dr. Cimino's] Illinois license may not be issued in time for the scheduled closing, I would suggest that [Plaintiff] act as the [PLLC Membership Interest Holder] **on a short-term basis until [Dr. Cimino's] license application gets approved**.
>
> By way of background, at VetCor, where I worked for 25 years, the first veterinary practice owner/Seller in a "[PLLC]" state would invariably become our "[PLLC Membership Interest Holder]".

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

***

Please note the following for your consideration:

- One of the [PLLC] documents is a "[Membership Interest Assignment]", that gets signed "in blank" by the [PLLC Membership Interest Holder] in advance; and *we hold onto it until that time when the [PLLC Membership Interest Holder] will be transferring their shares to the successor veterinarian*.

- (When I was at VetCor), we noted that, practically speaking, there is *virtually no interaction or activity with the State Veterinary Boards for [PLLC Membership Interest Holders]*.

- We, at BetterVet, have a Certificate of Insurance that we can provide - evidencing Professional Liability insurance coverage in the amount of $1M;

- Moreover, the [PLLC] documents contain further protection in the indemnification provisions covering the [PLLC Membership Interest Holder] in full….

(emphasis added). A true and correct copy of Ms. Koelsch's May 10, 2022 email is attached hereto and incorporated herein as Exhibit "C".

21. On May 19, 2022, Ms. Koelsch sent another email, stating, in part:

…As we had discussed, certain states have corporate practice of veterinary medicine rules that do not allow us (BetterVet) to utilize a limited liability company (LLC) (i.e., owned by non-veterinarians) to purchase veterinary practice assets; instead we are required to form a professional entity (i.e., professional corporation (PC) or professional limited liability company (PLLC)) for such veterinary assets purchase. (*The PLLC would enter into an Administrative Services Agreement arrangement with BetterVet LLC* ("the LLC", with the *LLC being the Manager*.)

Accordingly, on July 26, 2021, *we* filed a Certificate of Formation (with the IL SOS) - effectively forming an Illinois PLLC., called "**BV Veterinary Services Illinois, PLLC**".

***

As drafted, [Plaintiff] would act as the Membership Interest holder, Sole Member and officer – *until such time* as Dr. Dani Cimino is issued her Illinois Veterinary Board license and *can have the PLLC membership interest transferred from [Plaintiff] to [Dr. Cimino]*. (This would be *easy and quick to accomplish*, since [Plaintiff] would already have *signed* the *Assignment of Membership Interest*" … "*in blank*"….

4

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

(emphasis added). A true and correct copy of Ms. Koelsch's May 19, 2022
email is attached hereto and incorporated herein as Exhibit "D".

22.     On or about June 6, 2022, VIP Vet Visit and Plaintiff sold substantially all VIP Vet

Visit's assets used in its mobile and offsite veterinary business to Defendant and the PLLC

pursuant to that certain Practice Purchase Agreement dated June 6, 2022 ("Purchase Agreement")

and other transaction documents.

23.     At closing, Plaintiff delivered a signed blank assignment of all her interest in the

PLLC to Defendant to hold until such time as Dr. Cimino's Illinois veterinarian license was

approved.

24.     Under the Purchase Agreement, the PLLC purchased VIP Vet Visit's

pharmaceutical inventory.

25.     All other assets purchased under the Purchase Agreement were purchased by both

Defendant and the PLLC.

26.     Such assets included VIP Vet Visit's: (a) client list, including its clients' phone

numbers, email addresses, and other contact information; (b) veterinary patient files; and (c)

goodwill.

27.     On June 6, 2022, Defendant and the PLLC entered an administrative services

agreement ("Services Agreement"). A true and correct copy of the Services Agreement is attached

hereto and incorporated herein as Exhibit "E".

28.     Under the Services Agreement, the PLLC performs the practice's professional

veterinary services, while Defendant is the exclusive provider of all administrative services for the

practice, and controls all aspects of the PLLC's business other than professional veterinary

services. *See* Exhibit E.

29.     Defendant's administrative services to the PLLC include:

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

(a) Assisting with recruiting and screening prospective professional personnel;

(b) Providing administrative personnel, including determining and paying their salaries and other benefits;

(c) Billing, accounting, bookkeeping, budgeting, accounts receivable and payable, and other financial services;

(d) Maintaining patient records;

(e) Marketing of the professional services through media and otherwise;

(f) Providing equipment, furnishings, and supplies, including inventory (other than pharmaceutical inventory), which would remain Defendant's property (other than pharmaceutical inventory);

(g) Obtaining and paying insurance, including malpractice, general liability, and property insurance; and

(h) Notifying the PLLC of any changes to relevant laws and regulations affecting the practice or the PLLC.

*See* Exhibit E.

30.     In addition, Defendant also licensed the use of its proprietary name, "BetterVet", to the PLLC.

31.     Under the Services Agreement, Defendant is entitled to substantial fees and compensation from the PLLC, including:

(a) An annual licensing fee of five percent (5%) to fifteen percent (15%) of the then fair-market value of the practice;

(b) Monthly reimbursement of all Defendant's direct costs allocated to the PLLC, with a fifteen (15%) markup for overhead and other administration on such

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

costs;

(c) Monthly reimbursement for all Defendant's direct costs for acquiring and/or leasing and maintaining furniture, fixtures, and equipment provided to the PLLC;

(d) Monthly reimbursement for all Defendant's direct costs incurred in the provision of marketing services, with a ten percent (10%) markup for overhead and administration and a fifteen percent (15%) markup on profit on such costs; and

(e) A $100,000.00 practice location administrative fee for the PLLC to compensate Defendant for unallocated overhead and a "reasonable profit", subject to annual renegotiation.

*See* Exhibit E, Article 5.

32. After closing and execution of the Services Agreement, Defendant and the PLLC (under the BetterVet brand) began operating VIP Vet Visit's former veterinary practice, including contacting, profiting from, and providing services to VIP Vet Visit's former clients.

33. On or about June 6, 2022, the PLLC, through its affiliation with Defendant, began employing Plaintiff.

34. Thereafter, Plaintiff began providing mobile veterinary services on Defendant's and the BetterVet branded PLLC's behalf to clients located in approximately the same Chicago-area geographic region in which Plaintiff had previously provided veterinary services for VIP Vet Visit.

35. The Chicago-area geographic region in which Plaintiff provided veterinary services included primarily the south and west suburbs of Chicago.

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

36.     On information and belief, Defendant had not operated previously in the south and west suburbs of Chicago.

37.     Plaintiff's employment included providing continuing veterinary care to many of VIP Vet Visit's former clients and their pets.

38.     These former VIP Vet Visit clients made up most of Defendant's and the BetterVet branded PLLC's clients in Plaintiff's geographic coverage area.

39.     On information and belief, the VIP Vet Visit clients primarily agreed to bring their pets to the BetterVet-branded PLLC practice solely because of their prior relationship with Plaintiff and their desire to have her continue to provide their pets with veterinary care.

40.     On information and belief, Defendant and the PLLC had no other veterinarians performing services in Plaintiff's coverage area during her employment.

41.     On October 4, 2022, Plaintiff informed Defendant that she was resigning from her employment.

42.     Plaintiff's last date of employment was October 4, 2022.

43.     On October 5, 2022, Plaintiff received an off-boarding procedures email from Defendant's Director of Operations Enablement, Nicole Penrose, advising, in part:

> …**Client Communication:** We will be communicating with your clients via email regarding your departure tomorrow….
>
> (emphasis in original). A true and correct copy of the October 5, 2022 email is attached hereto and incorporated herein as exhibit "F".

44.     Other than the October 5, 2022 email, which did not specify what information would be communicated to clients regarding Plaintiff's departure, Plaintiff did not receive any communications from Defendant advising that it intended to notify Plaintiff's clients of her departure or what information those communications would contain.

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

45.    On October 20, 2022, Plaintiff discovered that Defendant had emailed a notification earlier that day to clients who had received services from Plaintiff, in the form of a written and signed letter ("Client Notice"). A true and correct copy of the Client Notice is attached hereto and incorporated herein as Exhibit "G".

46.    In the Client Notice, Defendant posed as Plaintiff and signed her name.

47.    The Client Notice states:

Hi [Client Name],

I hope this note finds you and your pet in good health. I'm reaching out to you with the news that I will be leaving my position with BetterVet as of today. I will truly miss all of my pet patients and their families. It has been my absolute pleasure getting to know you and your pet and I want to extend my thanks for welcoming me into your home.

I'm sorry that our time together was short; however, *__I know that you're in good hands__* **with my BetterVet colleagues**. While *I* don't have news about my replacement *__yet__*, please be assured that *__we are actively searching__* for a veterinarian to provide services in my original coverage area.

If you have any questions or have an urgent request, feel free to reach out to your client liaison by phone at (888) 788-1165 or by email at support@bettervet.com. They will be available to help you ***during this transition period***.

Thank you again and warm wishes to you and your pet.

Sincerely,
Karie Johnson, DVM

(emphasis added). *See* Exhibit G.

48.    Plaintiff had no knowledge Defendant intended to send the Client Notice posing as her, signing her name, and using her veterinary credentials.

49.    Plaintiff did not consent to Defendant sending the Client Notice.

50.    Plaintiff did not consent to Defendant signing her name or using her credentials to

the Client Notice.

51.     By expressly stating and representing that Plaintiff "[knew]" the clients would be "in good hands", the Client Notice gave a false endorsement by Plaintiff of Defendant and its BetterVet brand, Defendant's and the BetterVet brand's businesses, Defendant's and the BetterVet brand's veterinary services and clinics, and Plaintiff's former colleagues at Defendant's and the BetterVet brand's businesses, and any veterinarian hired to take over Plaintiff's prior coverage area and services.

52.     Further, by expressly stating that "we" are "actively searching" for a new veterinarian, the Client Notice falsely represents and implies that Plaintiff will have a continued association with Defendant and the BetterVet brand and will assist in locating, hiring, and vetting any veterinarian who takes over her coverage area and clients (whether hired by Defendant or another BetterVet branded business).

53.     Therefore, the Client Notice falsifies an endorsement by Plaintiff of Defendant and the BetterVet brand, Defendant's and the BetterVet brand's businesses, Defendant's and the BetterVet brand's veterinary services and clinics, Plaintiff's former colleagues at Defendant's and the BetterVet brand's businesses, and any veterinarian hired to take over Plaintiff's prior coverage area and clients (whether hired by Defendant or another BetterVet branded business).

54.     Plaintiff did not consent to Defendant impersonating her or forging her signature in the Client Notice, nor did she consent to Defendant falsifying an endorsement by her of Defendant and its BetterVet brand, Defendant's and the BetterVet brand's businesses, Defendant's and the BetterVet brand's veterinary services and practices, Plaintiff's former colleagues at Defendant's and the BetterVet brand's businesses, or any veterinarian hired to take over Plaintiff's prior coverage area and clients (whether hired by Defendant or another BetterVet branded business).

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

55.     On information and belief, Defendant sent the Client Notice to every client who had ever been a client of VIP Vet Visit, including clients who had never brought their pets to Defendant's or any BetterVet branded clinics or otherwise engaged Defendant or any BetterVet branded veterinary services or clinics.

56.     On further information and belief, Defendant also sent the Client Notice to all clients for whom Plaintiff had provided veterinary services on behalf of Defendant and/or the BetterVet branded PLLC, but who had never been VIP Vet Visit clients.

57.     On information and belief, these clients included all former clients whose pets were deceased and whom Plaintiff had had to euthanize.

58.     All such pets were marked as deceased in the company computer system.

59.     In Plaintiff's experience, when a veterinarian euthanizes a client's pet, standard practice in the industry is to never contact that client again unless the client uses the veterinarian for other services for other pets.

60.     It was Plaintiff's practice not to contact these clients.

61.     Plaintiff believes that contacting such clients is distasteful, not in line with industry standards, and would trigger painful memories for the clients who lost their pets.

62.     Plaintiff is mortified, ashamed, and has suffered substantial emotional pain and distress because of Defendant posing as her and sending the Client Notice to these and other clients.

63.     Further, Plaintiff has been contacted by former clients who are unhappy with Defendant's and the BetterVet branded businesses, services, and clinics and believe she is still associated with Defendant and its BetterVet brand.

64.     On information and belief, at least one client has been charged a monthly

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

membership fee by Defendant even after the client contacted Defendant and requested to cancel the membership.

65.     On information and belief, Defendant is charging client credit cards through VIP Vet Visit, thereby continuing to represent that Dr. Johnson remains associated with Defendant and its BetterVet branded businesses, services, and clinics.

66.     Within days after Plaintiff's departure, at least one client advised Plaintiff that when it had attempted to schedule an appointment with Plaintiff, the client was not told that she had left the company but rather that she was on a leave of absence.

67.     Defendant had no factual basis for apparently advising clients that Plaintiff remained employed by Defendant and only was on a leave of absence.

68.     On information and belief, Defendant's apparent misrepresentation to clients regarding Plaintiff's departure was made purely to harm Plaintiff's reputation and to paint her in a negative light by suggesting that Plaintiff remains associated with Defendant and the BetterVet brand's businesses, services, and clinics.

69.     Plaintiff's professional reputation has been damaged because of Defendant sending the Client Notice and thereafter apparently continuing to charge client credit cards using the VIP Vet Visit name and falsely advising clients that Plaintiff remained Defendant's employee.

70.     Because of the damage to Plaintiff's professional reputation, Plaintiff has lost income and other business opportunities.

71.     On information and belief, Defendant, both directly and indirectly through its entitlement to substantial fees and compensation under the Services Agreement, has profited and will continue to profit from sending the email because clients have continued and will continue to use Defendant's and the BetterVet brand's services and clinics based on their belief that Plaintiff

sent the Client Notice and that she endorses Defendant and the BetterVet brand, Defendant's and the BetterVet brand's businesses, all her former colleagues at Defendant's and the BetterVet branded businesses, Defendant's and the BetterVet branded veterinary services and clinics, and any veterinarian hired to take over Plaintiff's former coverage area and clients (whether hired by Defendant or another BetterVet branded business).

## COUNT I: VIOLATION OF RIGHT OF PUBLICITY ACT, 765 ILCS 1075/5, *et seq.*

1 – 71.  Plaintiff restates and realleges paragraphs 1 through 71 of the Statement of Facts as paragraphs 1 through 71 of this Count I as though fully alleged and set forth herein.

72.     Plaintiff is a living, natural person.

73.     By signing the October 20, 2022 Client Notice as written by and coming from "Karie Johnson, DVM", Defendant used Plaintiff's actual name and veterinary credentials.

74.     These are attributes which served to falsely identify Plaintiff as the Client Notice's author to any ordinary, reasonable client to whom Defendant sent the Client Notice.

75.     By using Plaintiff's actual name and veterinary credentials, Defendant intended to identify Plaintiff as the person sending the Client Notice.

76.     Defendant publicly published the Client Notice when it sent it to clients, including to Plaintiff's former clients located in her former coverage area.

77.     Defendant used Plaintiff's identity for its commercial purposes by impersonating her and forging her signature in a client communication designed to promote Defendant's and the BetterVet brand's businesses, services, and clinics, including to encourage Plaintiff's former clients to continue their relationship with Defendant and the BetterVet branded PLLC even after Plaintiff's resignation.

78.     Plaintiff did not consent, in writing or otherwise, to Defendant's use of her identity

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

after her departure, including its use of her identity in connection with Defendant's and the BetterVet brand's businesses, services, and clinics, and for purposes of advertising and promoting Defendant's and the BetterVet brand's businesses and veterinary services and clinics.

79.    As set forth above, Defendant's use of Plaintiff's identity as the person purportedly sending the Client Notice was intended to make clients believe that Plaintiff sent the email and that she endorsed Defendant and the BetterVet brand, Defendant's and the BetterVet branded businesses, Plaintiff's former colleagues at Defendant's and the BetterVet branded businesses, Defendant's and the BetterVet brand's businesses, services, and clinics, and any veterinarian who took over Plaintiff's former coverage area and clients (whether hired by Defendant or the BetterVet branded PLLC).

80.    Further, Defendant's use of Plaintiff's identity did confuse clients who believed that Plaintiff sent the email herself and endorsed the statements contained therein.

81.    Defendant violated Plaintiff's right to publicity and interests in her identity each time it sent the Client Notice to a separate client.

82.    Because of Defendant's actions in sending the Client Notice, Plaintiff has suffered and will continue to suffer actual damages, including all profits Defendant (whether directly or indirectly through its operation and affiliation with the BetterVet branded PLLC) has derived or will derive from its unauthorized use of Plaintiff's identity in the Client Notice.

83.    Further, Plaintiff's reputation has been damaged because Plaintiff has been contacted by former clients unhappy with Defendant's and the BetterVet brand's businesses, services, and clinics, and who believe Plaintiff sent the Client Notice, endorses Defendant's and the BetterVet brand's businesses, services, and practices, and her former colleagues, and remains affiliated with Defendant, the BetterVet brand, and the search for her replacement.

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

84.     Plaintiff does not endorse Defendant, the BetterVet brand, or their businesses, Plaintiff's former colleagues at Defendant's or the BetterVet's businesses, Defendant's or the BetterVet brand's veterinary services or practices, or any veterinarian hired to take over Plaintiff's coverage area and former clients (whether hired by Defendant or another BetterVet branded business).

85.     Plaintiff does not want her identity associated with Defendant's company, the BetterVet brand, or Defendant's or the BetterVet brand's businesses, services, or practices.

86.     Defendant's sending the Client Notice to clients, including to those with deceased pets, which is not in line with industry standards, has caused Plaintiff to suffer shame, mortification, and substantial emotional pain and suffering.

87.     Plaintiff does not yet know the full extent of the damage Defendant has caused her and anticipates having to incur expert fees to investigate and determine the extent of her damages.

88.     Plaintiff has incurred attorneys' fees, costs, and expenses in having to bring this action.

89.     Defendant's actions in sending the October 20, 2022 Client Notice were willful and egregious in that Defendant knew Plaintiff had not written the Client Notice and had not consented to Defendant using her identity after her departure for its commercial gain.

WHEREFORE, Plaintiff, KARIE ANNE JOHNSON, respectfully prays that this Honorable Court:

A.     Enter judgment in Plaintiff's favor and against Defendant, BETTER VET LLC, a Massachusetts limited liability company, pursuant to 765 ILCS 1075/40(a), for violating Plaintiff's right of publicity, in the greater of: (i) an amount to be proven at trial, of all profits Defendant (whether directly or indirectly through the Services

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

Agreement or its affiliation with the PLLC) derives from the unauthorized use of Plaintiff's identity, plus interest; or (ii) $1,000.00 statutory damages for each client Defendant sent the October 20, 2022 Client Notice to;

B.      Enter judgment in Plaintiff's favor and against Defendant, in an amount to be proven at trial, for Plaintiff's reputational damages resulting from Defendant's violation of Plaintiff's right of publicity;

C.      Enter judgment in Plaintiff's favor and against Defendant for punitive damages pursuant to 765 ILCS 1075/40(b);

D.      Award Plaintiff the expert fees, costs, and expenses she incurs in having to investigate and determine the extent of Defendant's violations of Plaintiff's right of publicity, the profits Defendant (whether directly or through the Services Agreement or its affiliation with the PLLC) derived and will continue to derive therefrom, the reputational damages Plaintiff has suffered and will continue to suffer because Defendant sent the October 20, 2022 Client Notice, and Plaintiff's other damages;

E.      Award Plaintiff her attorneys' fees, court costs, and expenses incurred in having to bring this action;

F.      Award Plaintiff pre-judgment interest pursuant to 815 ILCS 205/2; and

G.      Award Plaintiff such other and further relief as in equity this Honorable Court deems just in the premises.

## COUNT II: UNJUST ENRICHMENT

1 – 71. Plaintiff restates and realleges paragraphs 1 through 71 of the Statement of Facts as paragraphs 1 through 71 of this Count II as though fully alleged and set forth herein.

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

72 – 89. Plaintiff restates and realleges paragraphs 72 through 89 of Count I as paragraphs 72 through 89 of this Count II as though fully alleged and set forth herein.

90.     Defendant (both directly and indirectly through the Services Agreement and its affiliation with the BetterVet branded PLLC) benefitted financially from and was enriched when it used Plaintiff's identity without her permission and forged her endorsement of its businesses, services, and clinics, including her former colleagues, in the October 20, 2022 Client Notice.

91.     Specifically, the Client Notice benefitted Defendant because it bolstered Defendant's and the BetterVet brand's position with clients who chose to continue bringing their pets to Defendant's and the BetterVet branded PLLC's veterinary clinics on what the clients believed was Plaintiff's endorsement and continued affiliation with Defendant and the BetterVet brand.

92.     These clients trusted Plaintiff as she had been their primary contact with Defendant's organization and the BetterVet brand, with many of the clients having been Plaintiff's clients when she ran VIP Vet Visit and only having come to Defendant's and the BetterVet branded clinics because of Plaintiff's affiliation therewith.

93.     Plaintiff has been impoverished by Defendant sending the Client Notice because she has not received any portion of the commercial benefit Defendant improperly obtained by using Plaintiff's identity without her consent and forging her endorsement of Defendant's and the BetterVet brand's businesses, veterinary services and practices, and her former colleagues.

94.     Plaintiff has been impoverished further by Defendant sending the Client Notice because the email has tarnished her reputation with many of the clients who received the email, who are unhappy with Defendant's and the BetterVet brand's businesses, services, and clinics, and who believe Plaintiff remains affiliated with Defendant and the BetterVet brand.

17

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

95.     Defendant's enrichment relates directly to Plaintiff's impoverishment because Defendant's enrichment, namely, the commercial benefit Defendant has received and continues to receive after sending the Client Notice, caused Plaintiff's impoverishment.

96.     Defendant cannot claim that it was justified in impersonating Plaintiff and using her identity after her departure without her consent for its commercial gain, nor can it claim that it was justified in forging her endorsement of Defendant's and the BetterVet brand's businesses, services, and practices, her former colleagues, or any veterinarian hired to provide services in her former coverage area (whether hired by Defendant directly or by another BetterVet branded business).

97.     Further, as set forth in Count I, above, when Defendant sent the October 20, 2022 Client Notice, it violated Plaintiff's right to publicity.

98.     Defendant cannot show any justification for its actions that violated Illinois law.

99.     As the parties had no contract permitting Defendant to use Plaintiff's identity after her departure and forge her endorsement, Plaintiff has no adequate remedy at law whereby she can recover from Defendant the sums by which it was unjustly enriched.

100.    It would be inequitable to allow Defendant to retain the benefit it receives because of the financial improvement provided by using Plaintiff's identity without her consent and by forging her endorsement.

WHEREFORE, Plaintiff, KARIE ANNE JOHNSON, respectfully prays that this Honorable Court:

A.      Enter judgment in Plaintiff's favor and against Defendant, BETTER VET LLC, a Massachusetts limited liability company, in an amount to be proven at trial, for Defendant's unjust enrichment;

18

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

B.      Award Plaintiff pre-judgment interest pursuant to 815 ILCS 205/2; and

C.      Award Plaintiff such other and further relief as in equity this Honorable Court deems just in the premises.

## COUNT III: INJUNCTIVE RELIEF

1 – 71. Plaintiff restates and realleges paragraphs 1 through 71 of the Statement of Facts as paragraphs 1 through 71 of this Count III as though fully alleged and set forth herein.

72 – 89. Plaintiff restates and realleges paragraphs 72 through 89 of Count I as paragraphs 72 through 89 of this Count III as though fully alleged and set forth herein.

90 – 100. Plaintiff restates and realleges paragraphs 90 through 100 of Count II as paragraphs 90 through 100 of this Count III as though fully alleged and set forth herein.

101.    As set forth in Count I, above, Plaintiff has an individual right of publicity, namely, the right to control and choose whether and how to use her identity for commercial purposes, pursuant to 765 ILCS 1075/10.

102.    Defendant's unauthorized use of Plaintiff's identity for commercial gain in the October 20, 2022 Client Notice injured Plaintiff's substantive interest in her individual right to publicity.

103.    Plaintiff has no adequate remedy at law because her actual and reputational damages are difficult to calculate immediately and require further time to determine, including the hiring of an expert to investigate the extent of her damages.

104.    If Defendant is not prohibited from sending further notices, emails, or other communications pretending to be from Plaintiff or otherwise posing as Plaintiff and endorsing Defendant's or the BetterVet brand's businesses, services, and practices, Plaintiff will suffer further irreparable serious harm.

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

105.     If Defendant is not ordered to send an immediate retraction notice to the clients to whom Defendant sent the Client Notice, stating that the Client Notice was sent without her authorization and endorsement, Plaintiff will suffer further serious harm.

106.     When Defendant sent the Client Notice posing as Plaintiff, it knew that Plaintiff had not consented to Defendant's use of her identity after her departure and that it had no right to use her identity without her consent.

107.     Further, on information and belief, Defendant understood the consequences of impersonating Plaintiff and forging her endorsement, including the consequences of violating Illinois law and obtaining a financial benefit to which it was not entitled and at Plaintiff's expense.

108.     Alternatively, the harm Plaintiff will suffer if Defendant continues to violate Plaintiff's right of publicity and does not issue an immediate retraction of the Client Notice far outweighs any inconvenience or harm Defendant might suffer: (a) in not being able to continue to profit off its unauthorized and illegal use of Plaintiff's identity while the Court determines the merits of Plaintiff's case; and (b) having to issue a retraction of its false statements in the Client Notice.

109.     Plaintiff likely will be successful on the merits of the case as set forth more fully in Count I of this Amended Verified Complaint.

110.     Plaintiff's original Verified Complaint, filed November 1, 2022, includes a count seeking injunctive relief similar to the relief sought in this Count III. A true and correct copy of Plaintiff's original Verified Complaint is attached hereto and incorporated herein by reference.

111.     After filing her original Verified Complaint, Plaintiff filed her Motion for Temporary Restraining Order and Preliminary Injunction. A true and correct copy of Plaintiff's Motion is attached hereto and incorporated herein by reference.

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

112.    On November 15, 2022, the Court entered an Agreed Order, in which Plaintiff withdrew her Motion for Temporary Restraining Order and Preliminary Injunction without prejudice. A true and correct copy of the November 15, 2022 Agreed Order is attached hereto and incorporated herein as Exhibit "H".

113.    The November 15, 2022 Agreed Order provides that, absent further Court order, Defendant may not distribute the October 20, 2022 Client Notice or distribute any emails or communications purporting to be from Plaintiff. *See* Exhibit H.

114.    Given the allegations in this Amended Verified Complaint, and the parties' prior agreement in the November 15, 2022 Agreed Order, which has been in place for several months now, it is appropriate that the Court enter a permanent order:

(a)    Prohibiting Defendant from further distributing the October 20, 2022 Client Notice;

(b)    Prohibiting Defendant from distributing any other notices, emails, or communications purporting to be from Plaintiff; and

(c)    Ordering Defendant to issue an immediate retraction of the October 20, 2022 Client Notice to everyone to whom Defendant sent the Client Notice, advising that the Client Notice was sent without Plaintiff's authorization or endorsement.

WHEREFORE, Plaintiff, KARIE ANNE JOHNSON, respectfully prays that this Honorable Court:

A.    Issue a preliminary and permanent injunction in Plaintiff's favor and against Defendant, BETTER VET LLC, a Massachusetts limited liability company: (i) enjoining Defendant from republishing the October 20, 2022 Client Notice and/or

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

sending further notices, emails, or other communications pretending to be from Plaintiff or otherwise pretending to be Plaintiff endorsing Defendant's and the BetterVet brand's businesses, services, and clinics; and (ii) requiring Defendant to issue an immediate retraction of the October 20, 2022 Client Notice to everyone to whom Defendant sent the Client Notice, stating that it was sent without Plaintiff's authorization and endorsement; and

B.      Award Plaintiff such other and further relief as in equity this Honorable Court deems just in the premises.

*Plaintiff demands trial by jury.*

> Respectfully submitted,
> ALBEE LAW PC
>
> By:    ___/s/ Emma Y. Friebus___
>          One of Plaintiff's attorneys
>
> John W. Albee
> Emma Y. Friebus
> Albee Law PC
> Attorney No. 58441
> 1200 Shermer Road, Suite 430
> Northbrook, Illinois 60062
> Phone: (312) 279-0115
> Email: jalbee@albeelaw.com
>            efriebus@albeelaw.com

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| KARIE ANNE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2022 CH 10789 |
| | ) | |
| BETTER VET LLC, a Massachusetts | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATION</u>

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, KARIE ANNE JOHNSON, individually, certifies that she has read the above and foregoing Amended Verified Complaint and states that, to the best of her knowledge and belief, the facts contained therein are true and correct, except as to those matters stated to be on information and belief, and with respect thereto, she verily believes the same to be true.

By: _____
Karie Johnson (Feb 10, 2023 16:30 CST)
_____
KARIE ANNE JOHNSON, individually

John W. Albee
Emma Y. Friebus
Albee Law PC
Attorney No. 58441
1200 Shermer Road, Suite 430
Northbrook, Illinois 60062
Phone: (312) 279-0115
Email: jalbee@albeelaw.com
        efriebus@albeelaw.com

23

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

## ILLINOIS SUPREME COURT RULE 222 (B) AFFIDAVIT

Pursuant to Illinois Supreme Court Rule 222 (B), counsel for the above-captioned Plaintiff certifies that Plaintiff seeks money damages in excess of Fifty Thousand Dollars ($50,000.00).

Respectfully Submitted,

ALBEE LAW PC

By:    /s/ Emma Y. Friebus

One of Plaintiff's attorneys

John W. Albee
Emma Y. Friebus
Albee Law PC
Attorney No. 58441
1200 Shermer Road, Suite 430
Northbrook, Illinois 60062
Phone: (312) 279-0115
Email: jalbee@albeelaw.com
      efriebus@albeelaw.com

# EXHIBIT A:

# October 26, 2022 Email

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

On Tue, Apr 26, 2022 at 3:47 PM Wendy Koelsch <wendy@bettervet.com> wrote:

Hi Joe - I apologize about the delay in sending initial drafts; they will be distributed in the next hour or so.

(It takes a much longer time to draft the initial draft of the Purchase Agreement for transactions in "PC/PLLC" states.

In other words, in states (such as IL) where we (as the prospective non-veterinary owners of a veterinary practice) are required by the State's Corporate Practice rules to put in place a professional entity; (i.e., a professional corporation or professional limited liability company), with a veterinarian licensed in the State of Illinois as the PLLC's member interest holder) to operate the Practice.

In this case, our PLLC - formed in the State of Illinois - is "BV Veterinary Services Illinois, PLLC".)

Thanks.

Best,

Wendy

--



Wendy Koelsch
Legal Counsel

**EXHIBIT A**

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

# EXHIBIT B:

# PLLC Articles of Organization

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

Form **LLC-5.5**
February 2020

Illinois
Limited Liability Company Act
**Articles of Organization**

FILE #
10617073

This space for use by Secretary of State.

**Secretary of State**
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

**Payment must be made by certified
check, cashier's check, Illinois attorney's
check, C.P.A.'s check or money order
payable to Secretary of State.**

**SUBMIT IN DUPLICATE**
Type or print clearly.

Filing Fee: $150
Approved: ✓

**FILED**

JUL 2 6 2021

**JESSE WHITE
SECRETARY OF STATE**

LC0458146

1. Limited Liability Company name (see Note 1): BV Veterinary Services Illinois, PLLC

2. Address of principal place of business where records of the company will be kept: (P.O. Box alone or c/o is unacceptable.)

   60 Massachusetts Ave., Boston, MA 02115

3. Articles of Organization effective on: (check one)

   ☒ the filing date
   ☐ a later date (not to exceed 60 days after the filing date): _____
   Month, Day, Year

4. Registered agent's name and registered office address:

   Registered agent: C T Corporation System

   (P.O. Box alone or c/o is unacceptable.)

   | First Name | Middle Initial | Last Name |
   |---|---|---|

   Registered office: 208 S | LaSalle Street | Suite 814

   | Number | Street | Suite # |
   |---|---|---|

   Chicago | IL | 60604

   | City | | ZIP |
   |---|---|---|

   **Note:  The registered agent must reside in Illinois. If the agent is a business entity, it must be authorized to act as agent in
   this state.**

5. Purpose(s) for which the Limited Liability Company is organized: (see Note 2)

   **The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act
   and/or exclusively for the purpose(s) stated below:**

   Mobile veterinary services.

   **PAID**

   JUL 2 6 2021

   **DEPARTMENT OF
   BUSINESS SERVICES**

6. The duration of the company is perpetual unless otherwise stated. If the operating agreement provides for a dissolution date, enter
   that date here: _____

   | Month/Day | Year |
   |---|---|

EXHIBIT B

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

**LLC-5.5**

7. **Optional:** Other provisions for the regulation of the internal affairs of the company: (If additional space is needed, use standard sized paper.) _____

_____

_____

_____

8. The Limited Liability Company has or will have on the effective date of filing one or more members.

9. Name(s) and business address(es) of the manager(s) and any member with the authority of manager:

Dr. Lisa Danielle Cimino, DVM, 60 Massachusetts Ave., Boston, MA 02215

| Name | Number & Street | City | State | ZIP |
|------|-----------------|------|-------|-----|
| Name | Number & Street | City | State | ZIP |
| Name | Number & Street | City | State | ZIP |
| Name | Number & Street | City | State | ZIP |
| Name | Number & Street | City | State | ZIP |

(If additional space is needed, use standard sized paper.)

10. **Name and Address of Organizer(s):**

I affirm, under penalties of perjury, having authority to sign hereto, that these Articles of Organization are to the best of my knowledge and belief, true, correct and complete.

Dated: July 21 _____ , 2021
                Month/Day                          Year

1. _Lisa Danielle Cimino_, DVM
          Signature

Dr. Lisa Danielle Cimino, **President**
          Name and Title (type or print)

_____
If organizer is signing for a company or other entity,
state name of company or entity.

2. _____
          Signature

_____
          Name (type or print)

_____
If organizer is signing for a company or other entity,
state name of company or entity.

1. 60 Massachusetts Ave.
   Number              Street

Boston
          City

   MA                          02115
   State                       ZIP

2. _____
   Number              Street

_____
          City

_____
   State                       ZIP

**Note 1:** The limited liability company name cannot contain any of the following terms or abbreviations including: Corporation, Incorporated, LTD., Co. or Limited Partnership. The name must contain the term **Limited Liability Company, LLC or L.L.C.** For the following two entity types: a company providing professional services licensed by the Illinois Department of Financial and Professional Regulation must instead contain the term or abbreviation **Professional Limited Liability Company, PLLC or P.L.L.C.** The name of a worker cooperative shall end with the term or abbreviation **Limited Worker Cooperative Association, LWCA or L.W.C.A.**

**Note 2:** A professional limited liability company must state the specific professional service or related professional services to be rendered by the professional limited liability company.

# EXHIBIT C:

# May 10, 2022 Email

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

**Wendy Koelsch** <wendy@bettervet.com>                              Tue, May 10, 2022 at 10:06 AM
To: Joe Johnson <jjohnson@vipvetvisit.com>
Cc: "Dr. Karie Johnson" <kjohnson@vipvetvisit.com>, Joseph Beer <jbeerlaw@gmail.com>

Hi Joe - Thanks for the update regarding the document drafts.

Considering that Dr. Dani's Illinois license may not be issued in time for the scheduled closing, I would like to suggest that Dr. Karie act as the PC Stockholder on a short-term basis until Dr. Dani's license application gets approved.

By way of background, at VetCor, where I worked for 25 years, the first veterinary practice owner/Seller in a "PC" state would invariably become our "PC" stockholder.

Most of them did so indefinitely.  (In fact, the doctor who came on board with VetCor in the State of NY continues to be the PC Stockholder for the past 20 years.)

Please note the following for your consideration:

- One of the PC documents is a "Stock Transfer", that gets signed "in blank" by the PC Stockholder in advance; and we hold onto it until that time when the PC Stockholder will be transferring their shares to the successor veterinarian.

- (When I was at VetCor), we noted that, practically speaking, there is virtually no interaction or activity with the State Veterinary Boards for PC Stockholders.

- We, at BetterVet, have a Certificate of Insurance that we can provide  - evidencing Professional Liability insurance coverage in the amount of $1M;

- Moreover, the PC documents contain further protection in the indemnification provisions covering the PC Stockholder in full.

Please let me know if you have any questions regarding the above suggestion.

Thanks.

Best,

Wendy

--

BetterVet
Wendy Koelsch
Legal Counsel

[Quoted text hidden]

EXHIBIT  C

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

# EXHIBIT D:
# May 19, 2022 Email

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

On Thu, May 19, 2022 at 7:20 PM Wendy Koelsch <wendy@bettervet.com> wrote:

Hello All,

(Following up on my telephone conversation yesterday with Joe), attached are the (4) drafted "PLLC" documents, for your review and comment.

As we had discussed, certain states have corporate practice of veterinary medicine rules that do not allow us (BetterVet) to utilize a limited liability company (LLC) (i.e., owned by non-veterinarians) to purchase veterinary practice assets; instead we are required to form a professional entity (i.e., professional corporation (PC) or professional limited liability company (PLLC)) for such veterinary assets purchase.  (The PLLC would enter into an Administrative Services Agreement arrangement with BetterVet LLC ("the LLC"), with the LLC being the Manager.)

Accordingly, on July 26, 2021, we filed a Certificate of Formation (with the IL SOS) - effectively forming an Illinois PLLC., called "**BV Veterinary Services Illinois, PLLC**".

(Fyi:  The filed Certificate is attached as the 5th attachment hereto.)

As drafted, Dr. Karie would act as the Membership Interest holder, Sole Member and officer - until such time as Dr. Dani Cimino is issued her Illinois Veterinary Board license and can then have the PLLC membership interest transferred from Dr. Karie to Dr. Dani.  (This would be easy and quick to accomplish, since Dr. Karie would already have signed the Assignment of Membership Interests" (last page of Membership Interest Agreement) – "in blank" (i.e.., her signature witnessed, but no date inserted in the document upon signing).

Please feel free to let me know of any questions re: the drafted docs.

Thanks.

Best regards,

Wendy

BetterVet

EXHIBIT D

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

# EXHIBIT E:

# Administrative Services Agreement

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

# ADMINISTRATIVE SERVICES AGREEMENT

This Administrative Services Agreement (this "**Agreement**"), is entered into this June 6, 2022, by and between **Better Vet LLC**, a Massachusetts limited liability company qualified to do business in the State of Illinois (the "**Manager**"), and **BV Veterinary Services Illinois, PLLC**, an Illinois professional limited liability company (the "**PLLC**").

**WHEREAS**, the PLLC is engaged in the business of providing, among other things, veterinary services and related activities in the State of Illinois (the "**Practice**");

**WHEREAS**, the PLLC desires to obtain from the Manager, and the Manager desires to provide to the PLLC, the benefit of the Manager's expertise in the administration of practices similar to the Practice;

**WHEREAS**, the PLLC desires to obtain a license to use the proprietary name "BetterVet" in connection with the Practice from the Manager, and the Manager desires to provide the PLLC with such a license;

**WHEREAS**, the PLLC desires to obtain from the Manager, and the Manager desires to provide to the PLLC, certain equipment, supplies and inventory needed to operate the Practice; and

**WHEREAS**, the PLLC and the Manager wish to enter into this Agreement on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements herein set forth, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE 1

## RELATIONSHIP OF PARTIES

1.1    <u>Responsibilities of Parties</u>.  The parties agree that the PLLC will provide, and shall be solely responsible for providing, all professional veterinary services for the Practice, and the Manager will be responsible only for administrative services (as further described in this Agreement).  Nothing contained in this Agreement shall be construed as permitting or providing for the ownership, establishment, operation or management by the Manager of the professional veterinary services of the Practice, which services shall at all times be the sole responsibility of the PLLC; provided, however, that pursuant to its engagement hereunder, the Manager shall be the exclusive provider of all administrative services and shall control all aspects of the PLLC's business other than those aspects which relate directly to the provision of professional veterinary services.  Without limiting the generality of the foregoing, the PLLC shall be solely responsible for all activities described in <u>Section 2.4</u> of this Agreement.

1.2    <u>Relationship of Parties</u>.  The PLLC and the Manager are not joint venturers, partners, employees or agents of each other and, except as provided herein, neither party shall have any authority to bind the other.

EXHIBIT E

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

 1.3 <u>Practice</u>.  The PLLC agrees to conduct the Practice in compliance with all applicable laws, rules and ordinances, including with respect to the licensing and certification of its veterinarians.

**ARTICLE 2**

SERVICES OF THE MANAGER

 2.1 <u>Covered Services</u>.  The Manager, unless otherwise prohibited by law, shall control all aspects of, and shall provide to the PLLC, the following services, premises and assets (such services, premises and assets are hereinafter referred to collectively as the "**Covered Services**"):

 a. <u>General Administrative Services</u>.  Overall day-to-day supervision, conduct and management of the general administrative services required in connection with the business of the Practice, including supervision of the non-professional services and personnel described below.

 b. <u>Personnel</u>.  Provision of all personnel (other than licensed or certified professionals, collectively, the "**Professional Personnel**") needed to operate and support the Practice, such as receptionists and secretarial, clerical, purchasing and marketing personnel (collectively, the "**Administrative Personnel**").  The Manager shall have the sole and exclusive responsibility for determining the salaries and fringe benefits of all Administrative Personnel provided hereunder, and for paying such salaries and providing such fringe benefits.  In recognition of the fact that the Administrative Personnel provided to the PLLC under this Agreement may from time to time perform services for others, this Agreement shall not prevent the Manager from performing such services for others or restrict the Manager from so using the Administrative Personnel provided to the PLLC under this Agreement.  The Manager will make every effort consistent with sound business practices to honor the specific requests of the PLLC with regard to the assignment of the Manager's employees to the PLLC; however, the Manager reserves the sole right to determine the assignment of its employees.  Further, the Manager, in its sole discretion, may require each of its employees assigned to the PLLC to perform several of the Covered Services functions and duties simultaneously.

 c. <u>Professional Personnel</u>.  Assisting the PLLC in establishing guidelines for the selection, hiring and firing of the Professional Personnel of the PLLC, and recruiting and evaluating prospective Professional Personnel; provided, however, that the PLLC shall be solely responsible for all decisions related to the hiring and firing of Professional Personnel, and all of the Professional Personnel shall be employees of, or independent contractors to, the PLLC.

 d. <u>Training</u>.  Training of all Administrative Personnel and assistance to the PLLC in arranging for training and continuing education for Professional Personnel.

 e. <u>Administrative and Fiscal Services</u>.  Provision of general administrative, business and fiscal services to the PLLC in connection with the operation of the Practice, including patient billings, collecting billings, accounting, bookkeeping, budgeting, record keeping, accounts receivable and accounts payable processing, electronic data processing and such other services as the PLLC may from time to time require.

2

DocuSign Envelope ID: 19EB11E6-6870-4B84-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

f.      <u>Annual Budget</u>.  Prepare in reasonable detail annual operating and capital budgets for the PLLC that shall be delivered to the PLLC within thirty (30) days after the end for each fiscal year, with the Manager retaining the final authority with respect to budget items Notwithstanding the foregoing, consistent with <u>Section 5.2</u>, Manager shall consult with, and receive approval from PLLC with respect to budget items related to compensation and payments to the Professional Personnel.

g.      <u>Patient Records</u>.  Maintenance of patient records (which shall at all times remain the property and under the control of the PLLC) in accordance with applicable Illinois law and provision of record retrieval and monitoring services in connection with the Practice to assist the PLLC in connection with the Practice in utilization and quality assurance reviews in accordance with instructions and guidelines issued by the PLLC.

h.      <u>Quality Control</u>.  Assistance to the PLLC in the development of appropriate quality control programs, including development of performance standards, sampling techniques for case review, and preparation of appropriately documented studies in connection with the Practice.

i.      <u>Marketing, Development and Program Negotiation</u>.  Marketing of the professional services provided by the PLLC in connection with the Practice to potential customers through any and all media determined to be beneficial to the PLLC (the "**Marketing Services**"); provided, however, that the PLLC shall be consulted in connection with any such marketing activities.  The Marketing Services to be provided by the Manager include, but are not necessarily limited to, the placement of advertisements in magazines, newspapers and other publications, undertaking a telemarketing campaign and the holding of seminars.

j.      <u>Equipment and Supplies</u>.  Provision of all inventory (except for pharmaceutical and other prescription drug inventory), equipment, furnishings and supplies reasonably necessary for the efficient operation of the Practice.  Title to such inventory, equipment, furnishings and supplies shall at all times remain in the Manager.  At the end of the term of this Agreement, the Manager shall retain and the PLLC shall have no further right to use or possess, such inventory, equipment, furnishings and supplies as shall not have been consumed in the day-to-day operations of the Practice.

k.      <u>Malpractice Insurance</u>.  Assistance to the PLLC in obtaining malpractice coverage for the PLLC in connection with the Practice, its employees and agents in an amount not less than One Million Dollars ($1,000,000).  The Manager shall also assist the PLLC in obtaining general liability and property insurance in usual and customary amounts for the PLLC in connection with the Practice.  The Manager shall, on behalf and in the name of the PLLC, pay the premiums for all such insurance and shall provide the PLLC with evidence of payment on a periodic basis or as reasonably requested.

l.      <u>Professional Personnel Recruiting</u>.  Assistance to the PLLC in recruiting and screening prospective Professional Personnel.

m.      <u>Protecting Goodwill</u>.  All necessary steps to preserve and protect the reputation and goodwill associated with the PLLC in connection with the Practice, including

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

assistance in the monitoring of utilization and quality of services provided by the PLLC in connection with the Practice, and shall assist the PLLC to take all steps necessary to remedy any and all deficiencies in the efficiency or the quality of the services provided in connection with the Practice. This section shall not be construed as permitting the Manager to influence or control the Practice, the Professional Personnel or the quality of professional services rendered by the PLLC, which shall at all times remain the sole responsibility of the PLLC.

n.    <u>Operations and Regulatory Reports</u>.  Delivery to the PLLC of operations reports in connection with the Practice containing such information as the PLLC may reasonably request.  The Manager shall timely assist the PLLC in the preparation of all written reports and information that shall be lawfully required by any government body or agency having jurisdiction over the Practice or the PLLC in connection with the Practice.  The PLLC shall review and approve all such required reports and/or information before any dissemination of the same.

o.    <u>Processing Disputes</u>.  Administer and process all disputes, grievances and complaints between the PLLC in connection with the Practice and all third parties, subject at all times to the review and final approval of the PLLC.

p.    <u>Government Regulations; Licenses</u>.  To the extent known and material to the operation of the PLLC and the Practice, the Manager shall promptly notify the PLLC of any changes which may occur in relevant laws or regulations of any government, governmental body or agency having jurisdiction over the Practice or the PLLC in connection with the Practice.  The foregoing shall not in any way limit the PLLC's continuing professional and legal responsibility to comply with, and be aware of, all licensing, regulatory, professional or other requirements applicable to individuals licensed to provide veterinary services. File annual reports to maintain the PLLC's status in good standing with the Secretary of State.

q.    <u>Advances to PLLC</u>.  The Manager shall make advances to the PLLC as required by <u>Section 5.3</u> hereof.  Such advances shall bear a reasonable rate of interest, as mutually agreed to by the Manager and the PLLC, payable monthly.

The Covered Services shall include assumption of all obligations of the PLLC in connection with the Practice to provide administrative services to professional personnel who are not employed by the PLLC.  The Manager may perform the Covered Services directly or by reimbursing the PLLC for the cost of any Covered Services.

2.2    <u>Performance of Services</u>.  The Manager is hereby expressly authorized to perform the Covered Services hereunder in whatever reasonable manner it deems appropriate to meet the day-to-day administrative needs of the Practice.

2.3    <u>Events Excusing Performance</u>.  The Manager will not be liable to the PLLC for failure to perform any of the services required herein in the event of strikes, lockouts, calamities, acts of God, unavailability of supplies or other events over which the Manager has no control for so long as such event continues and for a reasonable period of time thereafter.

2.4    <u>Excluded Services</u>.  The parties hereto expressly acknowledge that the provision of all professional services, including, but not limited to, veterinary services by the PLLC, shall be separate and independent from the provision of administrative, fiscal and support services by the

4

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B
FILED DATE: 3/2/2023 12:59 PM    2022CH10789

Manager, and the PLLC shall be solely and exclusively responsible for all professional veterinary services rendered to patients of the Practice. Without limiting the generality of the foregoing, the parties acknowledge that the PLLC shall be solely responsible for setting all professional standards of the Practice and shall be responsible for the employment, supervision and discharge of all Professional Personnel and that the Manager shall have no responsibility for the conduct or supervision of the professional services of the Practice.

2.5    <u>Use of Name and Software</u>.    The Manager hereby grants to the PLLC a nontransferable, nonexclusive license to use the proprietary name "BetterVet" and any other proprietary names owned by the Manager and used by the PLLC in connection with the Practice, along with any and all trademarked symbols for the term of this Agreement (the "**License**") and use of the BetterVet app. All applicable common law and statutory rights in the proprietary name "BetterVet" and any other proprietary names owned by the Manager and used by the Practice and their accompanying symbols, including, but not limited to, rights relating to trademark, service mark, patent and copyright, and use of the BetterVet app, shall be and remain the sole property of the Manager.

## ARTICLE 3

### PROPRIETARY INTEREST AND RIGHTS OF THE MANAGER

3.1    <u>Competition</u>.    During the term of this Agreement, neither the PLLC nor any member of the PLLC shall, directly or indirectly, own an interest in, administer, manage, advise, assist, operate, join, control, participate in, or be connected in any manner with any corporation, limited liability company, partnership, proprietorship, firm, association, person or entity providing mobile veterinary services or administrative services in competition with the PLLC or the Manager or any of their affiliates, successors or assigns.

3.2    <u>Confidentiality</u>.    The PLLC acknowledges and agrees that the Manager is entitled to prevent its competitors from obtaining and utilizing its trade secrets. The PLLC agrees to hold the Manager's trade secrets in strictest confidence and not to disclose them or allow them to be disclosed directly or indirectly to any person or entity other than persons engaged by the PLLC or the Manager. The PLLC acknowledges its obligations to the Manager and the confidentiality of its relationship with the Manager and of any information relating to the services and business methods of the Manager which it may obtain during the term of this Agreement. The PLLC shall not, either during the term of this Agreement or at any time after the expiration or sooner termination of this Agreement, except as required by law, disclose to anyone other than employees, advisors having a fiduciary relationship with PLLC, or independent contractors of the PLLC or the Manager any confidential or proprietary information or trade secret obtained by the PLLC from the Manager; provided, however, that such confidential or proprietary information or trade secret shall not include information if and to the extent such information or trade secret (i) is public knowledge or becomes available to the public other than as a result of a disclosure by the PLLC; or (ii) was in the PLLC's possession prior to the date hereof. The PLLC also agrees to place any persons to whom such information is disclosed for the purpose of performance under legal obligation to treat such information as strictly confidential.

DocuSign Envelope ID: 19EB11E6-6870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

## ARTICLE 4

### BILLING AGENT AGREEMENT

4.1     <u>Professional and Other Fees</u>.  The PLLC shall, in consultation with the Manager, establish a schedule of fees and charges for the Practice's veterinary services.

4.2     <u>Billings</u>.  Billings of the Practice for all services rendered by the PLLC shall be by and in the name of the PLLC.

4.3     <u>Billing and Collection Agent</u>.  The Manager shall serve as billing and collection agent for the PLLC in connection with the Practice.  The Manager shall establish a depository bank account on behalf of the Practice and will deposit into such account collected fees generated from the Practice.  As provided for in standing instructions issued by the PLLC to the bank where such depository account is located, the Manager may withdraw all monies daily from said bank account for processing at a central location to be used for payment of the PLLC's expenses in connection with the Practice, including the amounts payable to the Manager pursuant to <u>Section 5.1</u> hereof and any amounts advanced to the PLLC pursuant to <u>Section 5.3</u> hereof.  Said processing will consist of establishing and maintaining a book account for the PLLC in connection with the Practice showing all fee collections and expense disbursements made by the Manager at the PLLC's request.  The Manager will provide the PLLC with monthly accounting statements for the Practice reflecting such processing.

4.4     <u>Reports</u>.  The Manager shall provide the PLLC with unaudited financial statements for the Practice.

4.5     <u>Security for the Manager's Compensation</u>.  To secure the prompt and orderly payment of any amounts owing by the PLLC to the Manager pursuant to this Agreement, or to facilitate the Manager in obtaining working capital loans, the PLLC hereby agrees to grant, at the request of the Manager, a security interest to the Manager or to a third party designated by the Manager, in all its existing and hereafter created accounts receivable, all cash or non-cash proceeds therefrom, all insurance policies and proceeds relating thereto, and all of the PLLC's rights as an unpaid provider of services, whether now existing or hereafter created or acquired (collectively, the "**Collateral**").  The PLLC agrees to execute any and all documents necessary to perfect such security interest, including, but not limited to, UCC financing statements.

## ARTICLE 5

### FEES

5.1     <u>Fees Payable to the Manager</u>.  The PLLC agrees to pay the Manager for the provision of the Covered Services and the License and all other services provided hereunder as follows:

a.     An annual license fee for the License in an amount equal to five percent (5%) to fifteen (15%) percent of the then "fair market value" of the practices subject to this Agreement (such percentage amount, the "**License Fee Percentage**"), such fair market value determination based on industry standard valuation methodologies applied consistently to each

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM     2022CH10789

particular location, and the definitive License Fee Percentage will be determined based on several factors including, without limitation, the financial success of the practice for that year, the growth of the practice, the location of the practice, the period of years in which the practice has been in operation, the addition of any "specialty" veterinary services offered at such practice, and such other key operational and demographic data, as the PLLC and the Manager may from time to time mutually agree upon;

b.      Monthly reimbursement of all the Manager's direct costs (i.e., payroll, supplies, travel, etc.) allocated to the PLLC, in the Manager's sole discretion with a 15% markup for overhead and administration on such costs;

c.      Monthly reimbursement of all the Manager's direct costs of acquiring and/or leasing and maintaining furniture, fixtures and equipment provided to the Practice;

d.      Monthly reimbursement of all the Manager's direct costs incurred in the provision of the Marketing Services, with a ten percent (10%) markup for overhead and administration and a fifteen percent (15%) markup for profit on such costs; and

e.      A practice location administrative fee for the practices (the "**Administration Fee**) of $100,000 per year in the aggregate, payable in equal monthly installments on the first day of each month of this Agreement, and subject to renegotiation by either party hereto on each anniversary of this Agreement. The Administration Fee is intended to compensate the Manager for its unallocated overhead and a reasonable profit. For example, on a practice-by-practice basis each year, the Manager may have unanticipated costs and expenses due to additional management time required for certain practice locations, additional safety training due to a high incidence of workplace injuries, higher than normal recruiting resources due to acute veterinarian staffing needs, unanticipated litigation or regulatory matters, etc. Such unanticipated costs and expenses shall be factored into the final determination of the Administrative Fee each year.

5.2    <u>Fair and Reasonable Compensation of the PLLC for Services of Professional Personnel</u>. The parties hereto agree that the PLLC shall have the right to fairly and reasonably compensate its Professional Personnel for their professional services. Compensation for the Professional Personnel shall be determined in accordance with employment agreements and other employment arrangements entered into between the PLLC, in consultation with the Manager, and the Professional Personnel.

5.3    <u>Remittances</u>. To the extent the PLLC shall not generate adequate revenues to meet the PLLC's ongoing operating expenses, including the fees payable to the Manager under <u>Section 5.1</u> of this Agreement and compensation for professional services pursuant to <u>Section 5.2</u> of this Agreement, the Manager shall advance to the PLLC or arrange for such amounts as may be required. To the extent that the Manager advances any funds to the PLLC pursuant to this <u>Section 5.3</u>, such advances shall be evidenced by interest-bearing demand note(s) from the PLLC in favor of the Manager and shall be secured by the Collateral as provided in <u>Section 4.5</u> hereof. Notwithstanding the foregoing, the Manager's aggregate fees listed in this Section 5 shall never exceed and shall be capped at the total annual profits of the PLLC in any particular year after all

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

other PLLC expenses have been paid and satisfied and as a result the PLLC shall not be liable to pay any such deficiency of fees to Manager, if one exists.

    5.4   <u>Periodic Adjustment of Compensation</u>.  The parties hereto recognize that the Practice may change in size and scope over the term of this Agreement, which may necessitate adjusting the fees provided for herein.  Therefore, the parties shall review the compensation to the Manager no less frequently than annually and more frequently at the request of the Manager or the PLLC, if changes in the business of the PLLC or services by the Manager warrant such more frequent review, and may agree in writing to modification of the compensation.  Such review shall consider the scope of operations pursuant to this Agreement at the time of review, the financial success of the Manager and the PLLC, changes in the purchasing power of money, the size and number of facilities being supplied by the Manager, the scope of the Marketing Services, the size of the Administrative Personnel workforce and the expenses and risks to the respective parties of performing this Agreement.

<b><u>ARTICLE 6</u></b>

<u>TERM AND TERMINATION</u>

    6.1   <u>Term</u>.  Unless sooner terminated in accordance with <u>Section 6.2</u> hereof, the term of this Agreement shall be for a period of ten (10) years, and shall automatically renew for additional five (5) year terms until terminated in accordance with <u>Section 6.2(d)</u> hereof.

    6.2   <u>Termination</u>.  Notwithstanding any provision of this Agreement to the contrary, this Agreement may be terminated as set forth below:

        a.   In the event of a material breach of this Agreement by either party as a result of such party's gross negligence or fraud, the other party may, at any time commencing sixty (60) days after written notice of the breach has been given to the breaching party, terminate this Agreement by delivery to the breaching party of a further written notice of termination; provided, however, that if the breaching party, prior to receiving such notice of termination, has begun and is diligently continuing good faith efforts to cure the breach, this Agreement shall remain in full force and effect;

        b.   If either party is determined by a court, administrative body or peer review organization having jurisdiction, to have engaged in conduct that results in material harm to the PLLC and constitutes (i) a felony or other crime involving moral turpitude, including fraud, theft, or embezzlement or (ii) a failure to act in an ethical or professional manner, in keeping with accepted veterinary medicine standards, then immediately upon notice by the other party;

        c.   If either party commences a voluntary case under bankruptcy, insolvency or similar law, or any involuntary case is commenced against either party under any bankruptcy, insolvency or similar law and such involuntary case is not dismissed within thirty (30) days after filing, then immediately upon notice from the other party; or

        d.   After the initial ten (10) year term of this Agreement, either party may also terminate this Agreement, with or without cause, by giving the other written notice of termination not less than sixty (60) days prior to the effective date of termination.

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

     6.3   <u>Rights Upon Termination</u>.  The termination of this Agreement shall not release or discharge either party from any obligation, debt or liability which shall have previously accrued and remains to be performed upon the date of termination.

## <u>ARTICLE 7</u>

### <u>GENERAL PROVISIONS</u>

     7.1   <u>Indemnification</u>.  Each party shall indemnify, hold harmless and defend the other party from and against any liability, loss, claims, lawsuits, damages, injury, cost, expense or other detriment arising out of or incident to the performance or nonperformance under this Agreement by such indemnifying party, its employees, Professional Personnel (in the case of the PLLC), Administrative Personnel (in the case of the Manager), and agents, including, without limitation, all consequential damages and attorneys' fees; provided, however, neither party shall be liable to the other under this <u>Section 7.1</u> for any claim covered by insurance, except to the extent liability of such party exceeds the amount of such coverage.

     7.2   <u>Assignment</u>.  The rights conferred upon the PLLC hereunder may not be transferred or assigned without the prior written consent of the Manager, and any assignment in violation of this <u>Section 7.2</u> shall be void.  This Agreement shall be assignable by the Manager.

     7.3   <u>Notices</u>.  All notices, requests or instructions hereunder shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, overnight delivery service or telecopy as follows:

     (1)   If to the PLLC:

        Dr. Karie Johnson, Sole Member
        PO Box:
        15128 S. La Grange Rd. #2053
        Orland Park, IL 60462
        Email:  kjohnson@vipvetvisit.com

        And

        BV Veterinary Services Illinois, PLLC
        60 Massachusetts Avenue
        Boston, MA 02115
        Attn:  Bruce Herzfelder, Asst. Secretary
        Telephone No.:  617-306-5051
        Email:  bruce@bettervet.com

        with copy to:
        Joseph J. Beer, (representing Dr. Karie Johnson)
        Attorney at Law
        J.J Beer, LLC
        314 S. Taylor Ave

DocuSign Envelope ID: 19EB11E6-8870-4884-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

Oak Park, IL 60527

(2)    If to the Manager:
BetterVet LLC
60 Massachusetts Avenue
Boston, MA 02115
Attn:  Bruce Herzfelder and Carolina Goncebat
Telephone No.:  617-306-5051
Email:  bruce@bettervet.com and carolina@bettervet.com

Any of the above addresses may be changed at any time by notice given as provided above; provided, however, that any such notice of change of address shall be effective only upon receipt. All notices, requests or instructions given in accordance herewith shall be deemed received on the date of delivery, if hand delivered, five (5) business days after the date of mailing, if mailed, one (1) business day after the date of mailing if sent by overnight delivery, and the same business day if sent by email during normal business hours.

7.4    <u>Entire Agreement</u>.  This Agreement and the documents referred to herein contain the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and no modification hereof shall be effective unless in writing and signed by the party against which it is sought to be enforced.

7.5    <u>Further Assurances</u>.  Each of the parties hereto shall use such party's best efforts to take such actions as may be necessary or reasonably requested by the other party hereto to carry out and consummate the transactions contemplated by this Agreement.

7.6    <u>Attorneys' Fees</u>.  Each of the parties hereto shall bear such party's own expenses in connection with this Agreement and the transactions contemplated hereby.

7.7    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois applicable to agreements made and to be performed entirely within such State, without regard to any conflict of laws principles which would apply the laws of any other jurisdiction.

7.8    <u>Article and Section Headings</u>.  The article and section headings in this Agreement are inserted solely for convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction of any term or provision hereof.

7.9    <u>Waiver</u>.  The waiver of any covenant, condition or duty hereunder by either party shall not prevent that party from later insisting upon full performance of the same.

7.10    <u>Amendment</u>.  No amendment in the terms of this Agreement shall be binding on either party unless in writing and executed by the duly authorized representatives of each party.

7.11    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and both of which taken together shall constitute one and the same instrument.

DocuSign Envelope ID: 19EB11E6-6870-4984-84F2-4FDE4969279B

FILED DATE: 3/2/2023 12:59 PM 2022CH10789

7.12 <u>Severability</u>. In the event that any provision of this Agreement shall be held to be void or unenforceable for any reason, the parties shall negotiate in good faith for a period of up to one hundred eighty (180) days in order to arrive at a mutually acceptable substitute provision.

[Remainder of Page Intentionally Left Blank]

DocuSign Envelope ID: 19EB11E6-6870-4984-84F2-4FDE4969279B

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

PLLC:

BV VETERINARY SERVICES ILLINOIS, PLLC

By:  Karie Johnson, D.V.M.
Title:  Member


MANAGER:

BETTERVET LLC

By:  Bruce Herzfelder
Title:  President

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

# EXHIBIT F:

# October 5, 2022 Email

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

From: **Nicole Penrose** <nicole@bettervet.com>
Date: Wed, Oct 5, 2022 at 4:47 PM
Subject: OffBoarding Process
To: Dr. Karie Johnson <kjohnson@vipvetvisit.com>, Perry Bailes <perry@bettervet.com>, Susan Bigusiak <susan@bettervet.com>, melissa marusarz <melissamarusarz@bettervet.com>, Henry Lu <henry@bettervet.com>, Nathan Hernandez <nathan@bettervet.com>, Kelly Singer <kellysinger@bettervet.com>, Juan Gallo <juangallo@bettervet.com>, Carolina Goncebat <carolina@bettervet.com>, Jessica Olivar <jessicaolivar@bettervet.com>

Hello Dr Johnson,
I am sorry to hear this news!
We have begun the offboarding process so you will see your access has been removed from EzyVet, Gmail and Hubspot. We have forwarded you emails to our liaison team to ensure your clients will receive a response. If you need access to anything please let me know.
Here is what you can expect in the following areas;
**Inventory/Supplies-** I have spoken with Joe and he has approved keeping the inventory and supplies in the garage of your home until another Veterinarian is hired to replace you. He has also spoken with Melissa and informed her of your departure.
@melissa marusarz can you please coordinate with Dr Karie a day to go and count and complete **this offboarding inventory count**.  I also need noted all equipment returned and serial numbers. Please complete the last 3 tabs of the spreadsheet. Dr Johnson has additional bags/storage that are a newer model of organization so please just list what is there in the tab designated.
*Please let me know when this is scheduled and if you have any questions :) Thank you!*
Dr Johnson, I have attached a spreadsheet that I will need you to fill out inorder to return your controlled substances. Once filled out I will submit it to the reverse distributor and within usually about a week I get return labels. The drugs will need to be packaged accordingly and shipped using the label back to the distributor. At which time they will confirm receipt. If these labels do not arrive before your BV credit card is cancelled we will discuss either reimbursement and/or another shipping payment option.
@Juan Gallo please inactivate Dr Johnson's vendor shipping accts.

**Car -** Please return the rental car as soon as possible. Confirm return to me please.

**Client Communication:** We will be communicating with your clients via email regarding your departure tomorrow. I will ask Joe to also include Dr Meredith Rives to help support your clients questions/refill requests during this transition.

EXHIBIT F

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

**Devices**: Please mail back your ipad, phone and any other devices to @Perry Bailes at 60 Massachusetts Ave, Boston MA 02115. You can use your BV card for shipping costs.

**HR/Payroll Management:** @Susan Bigusiak  will be terminating your employment effective 10/4 and you will receive your final paycheck on our next payroll run.

**Credit Card -** @Henry Lu will be canceling the card on 10/14 so please destroy it.

Again I am so sorry to hear news of your departure. Please let me know if you have any additional questions and I wish you all the best.


**Nicole Penrose, CVPM**
Director of Operations Enablement
BetterVet
Check out our app

Love BetterVet? Sharing is Caring!
Click Here to Share a Review



FILED DATE: 3/2/2023 12:59 PM   2022CH10789

# EXHIBIT G:

# October 20, 2022 Client Notice

**From:** BetterVet <hello@bettervet.com>
**Date:** October 20, 2022 at 12:00:22 PM CDT
**To:**
**Subject: Saying Farewell to Dr. Karie Johnson**
**Reply-To:** hello@bettervet.com



Hi █████ ,

I hope this note finds you and your pet in good health. I'm reaching out to you with the news that I will be leaving my position with BetterVet as of today. I will truly miss all of my pet patients and their families. It has been my absolute pleasure getting to know you and your pet and I want to extend my thanks for welcoming me into your home.

I'm sorry that our time together was short; however, I know that you're in good hands with my BetterVet colleagues. While I don't have news about my replacement just yet, please be assured that we are actively searching for a veterinarian to provide services in my original coverage area.

If you have any questions or have an urgent request, feel free to reach out to your client liaison by phone at (888) 788-1165 or by email at support@bettervet.com. They will be available to help you during this transition period.

Thank you again and warm wishes to you and your pet.

Sincerely,

Karie Johnson, DVM



(888) 788 1165

support@bettervet.com

  

BetterVet, 60 Massachusetts Avenue, Boston, MA 02115, United States, (888) 788 1165

Unsubscribe  Manage preferences

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

**EXHIBIT G**

FILED DATE: 3/2/2023 12:59 PM    2022CH10789

# EXHIBIT H:

# Agreed Order entered November 15, 2022

FILED DATE: 3/2/2023 12:59 PM  2022CH10789

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| KARIE ANNE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2022 CH 10789 |
| | ) | |
| BETTER VET LLC, a Massachusetts | ) | |
| limited liability company, and BV | ) | |
| VETERINARY SERVICES ILLINOIS, | ) | |
| PLLC, an Illinois professional limited | ) | |
| liability company, | ) | |
| | ) | |
| Defendants. | ) | |

### AGREED ORDER

This cause coming to be heard on Plaintiff, KARIE ANNE JOHNSON's Motion for Temporary Restraining Order and Preliminary Injunction, due notice having been given, and Defendants, BETTER VET LLC, a Massachusetts limited liability company, and BV VETERINARY SERVICES ILLINOIS, PLLC, an Illinois professional limited liability company (collectively, "Defendants"), appearing through counsel, Darren S. Cahr, Scharf Banks Marmor, LLC; the parties being in agreement; and the Court being advised fully in the premises:

IT IS HEREBY ORDERED:

1. Plaintiff hereby withdraws, without prejudice, her Motion for Temporary Restraining Order and Preliminary Injunction. This withdrawal shall not be understood as an admission, or as a waiver of any claims or defenses in this action.

2. Absent further order of this Court, Defendants shall neither distribute the October 20, 2022 email attached as Exhibit B to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, nor distribute any emails or communications purporting to be from Plaintiff.

3. This Agreed Order shall not be understood as an admission of liability or as a waiver of any claims or defenses in this action.

4. This matter is set for status on March 2, 2023, at 10:00 a.m., in Room 2601. Parties or their counsel may appear via Zoom Meeting ID: 940 2104 4687; Password: 296476.

**EXHIBIT H**

FILED DATE: 3/2/2023 12:59 PM   2022CH10789

SO AGREED:

Plaintiff: Karie Anne Johnson:               Defendants: Better Vet LLC and BV Veterinary
                                             Services Illinois, PLLC

By: /s/ Emma Y. Friebus                       By: /s/ Darren S. Cahr
    One of her attorneys                          One of their attorneys

            Judge                             Dated: _____
         Price Walker
        / 1 5 2022                            Enter:
     Circuit Court 2071

                                                          Judge

Prepared by:
Plaintiff's Attorney
John W. Albee
Emma Y. Friebus
Albee Law PC
Attorney No. 58441
1200 Shermer Road, Suite 430
Northbrook, Illinois 60062
Phone: (312) 279-0115
Email: jalbee@albeelaw.com
       efriebus@albeelaw.com