UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARIE ANN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-02044 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BETTERVET, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Karie Johnson sued two Defendants, BetterVet LLC and BV Veterinary Services Illinois PLLC, in state court. R. 1-2, Compl. After Johnson filed leave to voluntarily dismiss BV Veterinary as a defendant and the state court judge dismissed that company from the lawsuit, BetterVet removed the case to federal court. R. 1, Def.'s Not. of Removal. Although the parties agree that BV Veterinary's dismissal created complete diversity of citizenship between the parties,[1] Johnson now moves to remand the case to state court because the amount in controversy does not, Johnson says, exceed $75,000 as required for diversity jurisdiction. 28 U.S.C. § 1332(a); R. 15, Pl.'s Mot. to Remand. For the reasons below, Johnson's motion is denied.

---

[1] There is a complete diversity of citizenship between the parties. Johnson is a citizen of Illinois and has been domiciled in Illinois at all relevant times. Not. of Removal ¶ 14. BetterVet is a limited liability company and its sole member is BetterVet, Inc., which in turn is a Delaware corporation with a principal place of business in Massachusetts. *Id.* ¶ 15.

1

## I. Background

Johnson is a veterinarian. R. 1-1, Am. Compl. ¶ 4. She partly owned VIP Vet Visit, Inc, a veterinarian practice serving the Cook County area. *Id.* ¶¶ 9, 10. Johnson and BetterVet entered into an agreement for BetterVet to purchase VIP Vet Visit's practice and assets. *Id.* ¶ 13. Under the agreement, BetterVet and its professional limited liability company (PLLC) would operate VIP Vet Visit's former veterinary practice. *Id.* ¶ 32. BetterVet also acquired VIP Vet Visit's client lists, including client phone numbers, email addresses, and other contact information, along with its veterinary patient files. *Id.* ¶ 26.

In June 2022, Johnson started working at BetterVet, providing mobile veterinary services to clients in the same geographic region where she had previously provided veterinary services for VIP Vet Visit. Am. Compl. ¶ 33, 34. This arrangement ended in October 2022 when Johnson resigned from her job at BetterVet. *Id.* ¶ 41. Shortly after she resigned, it came to Johnson's attention that, after having received her resignation notice, BetterVet emailed a notification to clients who previously received services from Johnson. *Id.* ¶ 45. In the client notice, BetterVet posed as if the notice was written by Johnson herself and signed her name. *Id.* ¶¶ 45, 46. Johnson had no knowledge that BetterVet intended to send out a notice like that, supposedly on her behalf and using her credentials. *Id.* ¶ 48. The client notice expressed an endorsement of BetterVet, seemingly from Johnson, and an assurance that Johnson would continue to work with BetterVet throughout the transition process to find a

2

replacement. *Id.* ¶ 52. Johnson believes that this client notice was sent to all of BetterVet's (formerly, Johnson's) clients, including those clients whose pets had been euthanized and with whom Johnson had not communicated since. *Id.* ¶¶ 56–60.

In state court, Johnson sued BetterVet for violating the Illinois Right of Publicity Act, unjust enrichment, and injunctive relief, seeking "damages in excess of $50,000.00, plus unjust enrichment and other damages." Am. Compl. at 1. Following the dismissal of BV Veterinary Services Illinois PLLC as a defendant on March 2, 2023, BetterVet removed the case to federal court on March 31, 2023. Def.'s Not. of Removal. BetterVet then filed an amended notice of removal on April 6, 2023. R. 13, Def.'s Am. Not. of Removal.

## II. Analysis

Removal of a state court action to federal court is governed by 28 U.S.C. §§ 1441 and 1446. Section 1441(a) generally authorizes parties to remove state cases to federal court so long as the case could have been filed in federal court in the first place. Section 1446 sets forth the procedure for removal. Using the same language as Federal Rule of Civil Procedure 8(a)(1), Section 1446(a) requires only "a *short and plain statement* of the grounds of removal, together with a copy of all process, pleadings and orders served upon" the defendant. 28 U.S.C. § 1446(a) (emphasis added). The notice must be filed no later than 30 days after the defendant receives a copy of the initial complaint, § 1446(b)(1), or if the initial pleading is not removable, then within 30 days after receipt of an amended complaint that renders the case removable,

3

§ 1446(b)(3). Where, as here, a defendant premises removal on diversity jurisdiction, there must be an adequate statement of the amount in controversy. § 1446(c)(2).

The Court first briefly addresses Johnson's argument that it should not consider BetterVet's Amended Notice of Removal because it was filed outside of the 30 days prescribed by 28 U.S.C. § 1446(b)(1). Mot. to Remand at 1. To avoid lifting form over substance, however, "[d]efective allegations of jurisdiction may be amended" based on the proper exercise of discretion. 28 U.S.C. § 1653. The amended notice was filed only six days after the original notice and did not contain any significant new arguments. Def.'s Am. Not. of Removal. And Johnson had plenty of time to respond to the amended notice in its briefing on the remand motion. So the Court will consider the amended notice. It is worth noting that even if the amended notice had never been filed, there are sufficient allegations on the face of BetterVet's Notice of Removal and Johnson's Amended Complaint to satisfy the amount-in-controversy requirement.

In evaluating whether the amount-in-controversy requirement has been satisfied, the court is not strictly bound to the damages claimed in the plaintiff's pleadings. *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011). As the "proponent of federal jurisdiction," the defendant is "entitled to present its own estimate." *Id.* In evaluating the defendant's estimate, the question of whether the amount in controversy exceeds the $75,000 jurisdictional minimum is a "prediction" and "not a fact." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). The standard for evaluating the allegations put forth in a Notice of Removal is similarly low: "a defendant's notice of removal need include only a *plausible allegation*

4

that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added).

In the remand motion, Johnson seeks a level of specificity that is not required when deciding whether the amount-in-controversy requirement has been satisfied. Johnson argues that the Notice of Removal fails to satisfy the amount in controversy requirement because, first, she does not yet know the full extent of her damages, and second, information necessary to determine the total extent of her damages remains in BetterVet's possession. Pl.'s Mot. to Remand ¶¶ 14, 18. But ascertaining the amount in controversy diversity-jurisdiction cases is not limited to whatever explicit amount is sought by the plaintiff. Rather, the amount-in-controversy requirement may be satisfied by looking to the amount actually at stake, whether or not explicitly sought by the plaintiff. *See BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002). Although not explicitly requested by Johnson, the Court concludes that more than $75,000 is effectively at stake between the parties based on the allegations in the Amended Complaint.

Johnson claims that BetterVet violated her right to publicity and interests in her identity for *each* notice it sent to *each* client, and she argues that she is entitled to all of the profits that BetterVet derived from the unauthorized use of her identity, plus interest—or $1,000 in statutory damages for each client the client notice was sent to. Am. Compl. ¶¶ 81, 89. As alleged in the Amended Complaint, BetterVet was making at least some profit after taking over Johnson's client list and practice area. Johnson ran a successful veterinary business for nearly three and a half years, as she

5

herself alleges. *Id.* ¶ 10. Upon closing the purchase agreement with Johnson, BetterVet began operating VIP Vet Visit's former veterinary practice, which included "contacting, profiting from, and providing services" to Johnson's former clients. *Id.* ¶ 32. Johnson then began providing veterinary services on BetterVet's behalf in around the same region and to many of the same clients that she had previously serviced on behalf of VIP Vet Visit. *Id.* ¶¶ 34, 37. Thus, although the exact number of clients BetterVet retained from Johnson is currently unknown, according to the Amended Complaint there existed a group of clients Johnson served that generated a revenue resulting in Johnson's former veterinary business being one worth buying for BetterVet.[2] These clients, or at least a portion of them, are presumably the same ones from whom BetterVet has continued to derive a profit since sending the client notice and with whom Johnson's reputation has been damaged as a result of the client notice being sent by BetterVet.[3] To repeat, all that is needed to ascertain the amount in controversy is a prediction, not a certainty. *Meridian Sec. Ins. Co.*, 441 F.3d 536 at 541. Despite Johnson's position that she does not yet know the extent of her damages, BetterVet's Notice of Removal plausibly estimates that at least $75,000 is at stake

---

[2]Although BetterVet mischaracterizes the Amended Complaint by contending that Johson seeks to recover a $100,000 administrative fee that was exchanged between BetterVet and its PLLC, Def.'s Am. Not. of Removal at 1, the Court only considers this figure as context for the value of the parties' business agreement, BetterVet's possible profits, and thus how much is at stake in this dispute.

[3]This is a reasonable inference despite BetterVet's failure to disclose the number of clients that received the client notice in its Notice of Removal, which would have allowed for a straightforward evaluation of its claim that potential damages exceed $75,000 based on recoverable statutory damages alone.

between the parties based on the Illinois Right of Publicity Act allegations in the Amended Complaint.

Indeed, in addition to Johnson's explicit request for more than $50,000 in damages, Am. Compl. at 24 (Ill. S. Ct. Rule 222(b) affidavit), Johnson also requests reputational damages, recovery for unjust enrichment, and punitive damages. *Id.* ¶¶ 89, 100. These damages could readily exceed the $75,000 amount-in-controversy requirement, even if awarded based on a notice mailed to a single client. For example, Johnson alleges that, in a break from industry standard, the client notice was sent to clients whose pets had been euthanized by Johnson and with whom Johnson had not since communicated. *Id.* ¶¶ 57, 59. Johnson claims to have suffered mortification, shame, and substantial emotional distress arising from pet owners being callously reminded of their loss by what amounts to an advertisement supposedly sent under Johnson's signature. *Id.* ¶ 62. In her separate claim for unjust enrichment, Johnson further alleges that she "has been *impoverished*" by BetterVet's having sent the client notice while BetterVet continues to derive a commercial benefit as a result. *Id.* ¶¶ 93, 95 (emphasis added). Johnson alleges that many of the clients who received the notice were those who only brought their pets to BetterVet because they were formerly clients of Johnson, and thus continued to provide business to BetterVet only because they believed that Johnson endorsed and continued to be affiliated with BetterVet after having received the client notice. *Id.* ¶¶ 91–92. Johnson also alleges that BetterVet continues to benefit as a result of the false endorsement in the client notice, deriving an unknown amount of profits from those clients who otherwise would not

have chosen to continue to bring their pets in for care, while she fails to derive any commercial benefit. *Id.* ¶¶ 91, 93. Considering the unjust enrichment claim in addition to the Right of Publicity Act claim, a recovery of more than $75,000 is readily possible, and removal of the case is proper.[4]

Once a proponent for federal jurisdiction has made a good-faith estimate of the amount in controversy, federal jurisdiction will be defeated only if the plaintiff can show that a recovery of that amount is "legally impossible." *See Back Doctors Ltd.*, 637 F.3d at 830. The text of the Illinois Right of Publicity Act does not place a cap on the number of violations that can give rise to statutory damages, 765 ILCS 1075/40, and Johnson makes no argument that a recovery of $75,000 would be legally impossible. Rather, she continues to assert that the total damages to be recovered remains unknown. Pl.'s Mot. to Remand ¶ 18. But it is more than plausible that the amount at stake is well over $75,000. As a result, BetterVet's estimate of the amount in controversy controls, and the jurisdictional minimum for diversity jurisdiction is satisfied.

Finally, Johnson argues that it is unfair for BetterVet to seek removal when the amount in controversy is unknown and BetterVet has been uncooperative in handing over discovery materials that would allow Johnson to have a better idea of the potential damages to be recovered, such as how many clients were sent the client

---

[4]The Court also notes that Johnson did not stipulate that damages would be less than $75,000. R. 20, Pl.'s Reply at 5. Where a plaintiff refuses to stipulate to damages of $75,000 or less, "the inference arises" that the plaintiff thinks that the claim may be worth more. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000)).

notice and what, if any, profits were derived as a result of sending out the client notice. Pl.'s Mot. to Remand ¶¶ 14–16, 19. Of course when discovery gets going, the Court fully expects that BetterVet will turn over all relevant records on the extent of damages. As explained above, however, for purposes of determining the amount in controversy, no reference to facts outside of Johnson's Amended Complaint and BetterVet's Notice of Removal is needed, meaning there is no need for jurisdictional discovery before accepting the removal. The motion to remand is denied.

### III. Conclusion

BetterVet's removal of the case to federal court is proper under 28 U.S.C. §§ 1441 and 1446. The parties are citizens of different states and the amount-in-controversy requirement has been satisfied given the facts alleged in BetterVet's Notice of Removal and Johnson's Amended Complaint. The motion to remand is denied. The parties shall make Rule 26(a)(1) disclosures by April 19, 2024 (and, again, BetterVet must make a fulsome disclosure on the extent of potential damages, including the breadth of the client-notice distribution). The parties shall confer and file a joint status report with a proposed discovery schedule by April 12, 2024.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2024